# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BILLY JOE HUMPHREYS,**

        **Plaintiff,**

**-vs-**                                                                   **Case No. 6:13-cv-1701-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on April 6, 2011, alleging an onset of disability on December 20, 2008, due to herniated discs, loss of vision in right eye, and insomnia. R. 59. His application was denied initially and upon reconsideration. R. 99-123. Plaintiff requested a hearing, which was held on July 23, 2012, before Administrative Law Judge Michael Calabro (hereinafter referred to as "ALJ"). R. 19. In a decision dated August 10, 2012, the ALJ

found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-19. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied August 30, 2013. R. 1-7. Plaintiff filed this action for judicial review on November 1, 2013. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was forty-six years of age at the time of the hearing and had obtained his GED. R. 28, 31. Plaintiff had been employed as a combination welder, a medium exertional, skilled job, but he performed the job at the heavy level and a construction, plumber, a heavy exertional level, skilled job[1]. R. 49.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a herniated disc in his lower back and a major loss of vision in his right eye, leaving only a little vision in the outside edges. R. 36, 39. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar spine, lumbar disc herniation at L5-S1, and loss of visual acuity, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13-14. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with certain exertional and visual limitations. R. 14. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 17. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a stuffer, system-surveillance monitor, and a food and beverage order clerk. R. 18. Accordingly, the ALJ determined

---

[1]Plaintiff's work history was interrupted during the three or four times he was incarcerated. R. 32.

that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 19.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred in determining that he had the residual functional capacity to perform sedentary work with limited near and far right visual

acuity, "as well as limitation of the size of the field of vision in the right eye" after failing to adequately weigh and consider all of the medical evidence supporting his limitations. Second, he claims the ALJ erred by improperly relying on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect the limitations given by Plaintiff and the vocational expert clearly stated that she had redefined the ALJ's limitations regarding the claimant's visual limitations. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC

Plaintiff claims that the ALJ erred in finding him able to perform sedentary work with limited near and far right visual acuity and "a limitation of the size of the field of vision in the right eye" after failing to adequately weigh and consider all of the medical evidence supporting Plaintiff's limitations. The Commissioner argues that the ALJ properly assessed Plaintiff's RFC.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ determined Plaintiff had the RFC to perform sedentary work except that he could lift ten pounds occasionally and files, tools, ledgers, and small tools frequently, could sit for six hours out of an eight-hour day, and stand or walk for two hours out of an eight-hour day; avoid work at unprotected heights or around dangerous machinery; he could occasionally climb stairs and ramps; and he had limited near and far right visual acuity, as well as limitations in the size of the field vision in the right eye. R. 14. The ALJ also found that Plaintiff was not capable of performing his past relevant work, but could perform other representative jobs of stuffer, system surveillance monitor, and food and beverage order clerk. R. 17-18.

First, Plaintiff contends the ALJ's description as to Plaintiff's vision limitations is "confusing at best." Doc. 16. The ALJ held that Plaintiff "has limited near and far right visual acuity, as well as limitation in the size of the field of vision in the right eye." R. 14. Plaintiff argues that the ALJ did

not adequately characterize his field of vision limitation as zero vision or completely limited in his right eye, *i.e.*, as more than just a "limitation" in the "size of the field of vision in the right eye." Additionally, Plaintiff argues that as a person blind in one eye, he has no depth perception, yet the ALJ makes finding or mention regarding a limitation in depth perception. Thus, Plaintiff argues that his visual limitations were not adequately characterized or considered when determining the residual functional capacity.

The Commissioner argues that the ALJ properly found that the medical records did not support the severity of Plaintiff's allegations regarding his visual impairment; the ALJ noted that treatment records from March 2011 reported that Plaintiff had 20/40 acuity when using both eyes and Plaintiff had testified at the hearing that he had 20/20 vision in his left eye but only peripheral vision in his right eye. R. 15-16, 39-41, 311. The ALJ had also found that Plaintiff's own statements regarding his activities of daily living showed he was able to function and perform a moderate range of independent activities, including preparing simple meals and driving, despite his visual impairment R. 16, 221-24. Plaintiff also testified at the hearing that he could see "a little bit of the outside edge" and the "walls on the outside" of the ALJ's face, which the Commissioner argues, indicate he retained peripheral vision in his right eye and undermine his apparent contention that he had no vision at all in his right eye. R. 39-40.

The ALJ found, "[w]ith regard to his right eye blindness, the claimant testified his right eye vision was blurred. He explained that if he closed his left eye, he only had peripheral right eye vision and could not see straight ahead. The claimant testified that in 2011, he visited the retina center in Lake Mary, where his eye was examined with eye drops and laser equipment. The claimant testified that the doctor informed him that blood vessels that ruptured in the right eye caused his right eye diminished vision." R. 15. The ALJ found the medical records did not support the severity of Plaintiff's allegation of right eye blindness because the available records showed that Plaintiff had

-6-

20/40 acuity when using both eyes. R. 15-16. This eye test, performed by Central Florida Family Health Center, tested Plaintiff's visual acuity for both eyes and found he had overall visual acuity of 20/40. R. 311. Accordingly, the ALJ's opinion was based on substantial evidence.

Plaintiff also argues that the ALJ erred in omitting any discussion of the medical records of Dr. Kayvan Ariani and in discussing two other physicians interpretations of two MRIs, which he contends the ALJ should have discussed in accordance with *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011). Under *Winschel*, "the ALJ must explicitly consider and explain the weight accorded to the medical opinion evidence." *Id.* at 1179.

Plaintiff argues the ALJ should have discussed Dr. Ariani's treatment records from January 22, 2008 which note that Plaintiff complained of low back pain and left lower extremity pain; Plaintiff had a reduced range of motion in the lumbar spine and reduced flexion. R. 320-21. After reviewing the December 2007 MRI, Dr. Ariani diagnosed Plaintiff with low back and left lower extremity pain, radicular; lumbar spondylosis with broad-based L5-S1 posterior disc protrusion and interior extrusion; he also recommended epidural steroid injections for Plaintiff's severe left foraminal stenosis at the L5-S1 level. R. 321. The page cited by Plaintiff contains the records from Florida Hospital Outpatient Center, as dictated by Dr. Ariani (Ex. 6F). R.320-22. The Commissioner points out that the ALJ did specifically cite the treatment notes from January 2008 and correctly noted that the doctor's examination of Plaintiff's lower extremities was unremarkable, and though Plaintiff had neural tension, his gait was normal and neurological functioning was intact with well-preserved motor function. R. 16, 321. Although the ALJ did not specifically identify the notes as those of Dr. Ariani, the ALJ did discuss the relevant notes and gave them the appropriate weight, which is all that is required under *Winschel*.

Plaintiff contends that the ALJ failed to properly consider and discuss Dr. Gregory Munson's opinion of the results of a December 2008 MRI and Dr. Conaughty's opinion of a December 2007

MRI.  Plaintiff argues that the ALJ curtailed the description of the December 2008 MRI study as showing "L5-S1 circumferential disc bulge that mildly indented the ventral thecal sac," (R. 15) when the MRI results actually added the bulge was "contacting the traversing S1 nerve roots, greater on the left than the right and mild bilateral foraminal stenosis with contact yet not compression of the L5 nerve root ganglia bilaterally." R. 328-29.  Plaintiff also argues that the ALJ failed to mention Dr. Munson's December 30, 2008 notes, made after reviewing the same MRI, and his opinion that the MRI revealed a protrusion of disc material at L5-S1, mostly on the left side, that was contacting the left S1 nerve root with additional advanced disc degeneration at L5-S1 (R. 294, 302).

Plaintiff also contends that the ALJ indicated that "Dr. Conaughty noted that the claimant's [December 2007] lumbar spine MRI study showed disc herniation at L5-S1, but he remarked that the study was of poor quality and the significance of the herniation could not be determined" (R. 15) when Dr. Conaughty's report actually noted that it was "very difficult to elucidate how big the disc herniation is" (R. 325), although he could tell Plaintiff was experiencing S1 radiculopathy due to a L5-S1 disc herniation.  Plaintiff contends that the ALJ erred in failing to mention this evidence in determining the RFC, and his decision was not based on substantial evidence.

The Commissioner argues that the ALJ provided a sufficient discussion of the relevant evidence in reaching his findings.  Doc. 24 at 5 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").  As in other cases before this Court, the Commissioner continues to cite to a pre-*Winschel* case, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), for the proposition that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Doc. 24 at 5. However, that is no longer the standard with regard to treatment notes from treating physicians that reflect judgments about Plaintiff's impairments, at least in this circuit. The Eleventh Circuit's opinion in *Winschel*, which was very critical of the ALJ's lack of discussion of

relevant treatment notes, is now the applicable standard.  In *Winschel*, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)).

The Commissioner argues that the ALJ *did* specifically discuss the opinions of Dr. Munson and Dr. Conaughty, and those opinions were not overlooked.  The Commissioner also argues that the ALJ's decision is supported by the opinion of the state agency reviewing physician.  Doc. 24.

The ALJ found:

A review of the record shows that the claimant has a history significant for a spine disorder. The claimant reported that he sustained a work-related back injury that has caused unrelenting back pain symptoms. The claimant underwent an MRI exam of the lumbar spine on December 28, 2007. The study revealed left posterolateral herniation of disc material at the L5-Sl level with associated degenerative disc change with decrease in water content, mild disc bulging at L4-5 level, and scattered bony degenerative changes (Exhibit 2F). During this time, the claimant received chiropractic treatment with spinal manipulation and adjustments (Exhibit lF). Upon examination, the claimant had palpable muscle spasms in the lumbar spine and tenderness (Exhibit lF/4-5). The follow up December 2008 MRI study of the lumbar spine showed L5-S1 circumferential disc bulge that mildly indented the ventral thecal sac (Exhibit 8F). The claimant continued to report pain symptoms and was referred to Jason M. Conaughty, M.D., of the Spine & Brain Neurosurgery Center in January 2008 (Exhibit 7F). Dr. Conaughty noted that the claimant's lumbar spine MRI study showed disc herniation at L5-Sl, but he remarked that the study was of poor quality and the significance of the herniation could not he determined (Exhibit 7F). Dr. Conaughty noted that the claimant walked with a tandem heel-toe gait and was not in distress.

I conclude that the objective medical findings support the complaints of pain; however, the record does not support incapacitating limitations. For example, on physical examination, neurosurgeon Dr. Conaughty reported that the claimant was able to walk on toes and heels without any undue difficulty, and that he had negative straight leg raises bilaterally (Exhibit 7F/3). Secondly, the January 2008 physical examination showed that the lower extremities were unremarkable (Exhibit 6F/3).

> Though the claimant had neural tension, his gait was normal and neurological functioning was intact with well-preserved motor function. Lastly, I note that in December 2008, the claimant was evaluated at Jewett Orthopedic under the care of Gregory Munson, M.D., (Exhibits 3F and 4F). Dr. Munson recommended surgical intervention (discectomy and fusion) provided that the claimant stop smoking and undergo pain management to address his complaints (Exhibit 4F/7). In follow up treatment notes dated February 9, 2009, the claimant reported that he cut back on smoking but had not completely stopped; however, Dr. [Munson] remarked that he was unwilling to perform the discectomy and fusion if the claimant did not stop smoking. Remarkably, the claimant reported that he was "getting by pain-wise" and wanted to hold off on surgery (Exhibit 3F/7). Notably, the claimant testified that he was unable to have back surgery because he could not financially afford it yet Dr. [Munson's] treatment notes suggest otherwise.
>
> I find that the claimant's allegations are not entirely credible. The claimant testified that he was not able to continue receiving medical treatment because he could not financially afford it; however, a review of the medical file does not indicate that he sought treatment or assistance from a local county health department or that he sought emergency care for the allegedly disabling pain symptoms. The claimant further alleged that he was not able to afford prescription medications but he is apparently able to acquire other, non-essential products, as he testified at the hearing. . . . Despite his visual and back pain complaints, the claimant is able to function and has acknowledged the ability to perform a moderate range of routine activities of daily living independently. In addition to being self-reliant with personal hygiene care, the claimant reported the ability to prepare simple meals, drive a vehicle, and manage his finances (Exhibit 5E).

R. 15-16. The ALJ also gave great weight to the opinion of the state agency medical consultant who concluded that Plaintiff could perform a range of light work activity. R. 16.

The ALJ accurately described Dr. Conaughty's overall opinion of the "very poor quality" December 2007 MRI, and, in fact, the doctor had recommended repeating the MRI of the lumbar spine as well as treatment with epidurals. R. 325-26. The ALJ also considered Dr. Munson's findings that Plaintiff had "a little bit of protrusion of disc at L5-S1 on the left side that is contacting the left S1 nerve root but it is mild compression." R. 294. Dr. Munson noted Plaintiff also had advanced disc degeneration at L5-S1 and recommended discectomy and fusion but he would have to quit smoking and reduce the level of narcotic pain medication before Dr. Munson would consider operating. R. 294. The ALJ appropriately cited Dr. Munson's subsequent treatment notes from February 2009 that

said, "[A]mazingly, he has been able to completely get off pain medicines and is not taking anything over the interval months. . .He would like to hold off on surgery for right now. He is getting by pain-wise." R. 295. The ALJ's discussion of Dr. Conaughty's and Dr. Munson's treatment notes as well as their overall opinions are based on substantial evidence.

### B. VE testimony and hypothetical question

Plaintiff argues that the ALJ improperly relied on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect Plaintiff's limitations and the VE clearly stated that she had redefined the ALJ's limitations regarding Plaintiff's visual limitations. The Commissioner contends the ALJ had properly determined Plaintiff's RFC and limitations, and was not required to include additional limitations in his hypothetical questions to the VE.

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). The hypothetical question need only contain those functional restrictions the ALJ finds supported by the record, and need not include all subjective complaints made by the claimant. *See McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986).

The ALJ's asked a hypothetical question which included "limited visual acuity," and the VE asked if that meant "near and far" vision, to which the ALJ responded "near and far visual acuity limitations as well as the depth of field, or excuse me, the size of the field of vision in his right eye." R. 50. The VE clarified that the depth of field was just a limitation in the right eye, which the ALJ answered affirmatively. R. 50. The ALJ then modified the hypothetical to the sedentary level with

the appropriate restrictions on lifting, standing, walking and sitting, but with "the same visual limitations." R. 51. The VE responded that such a hypothetical person could perform the job of stuffer, surveillance system monitor, and beverage order clerk. R. 51-52.

Plaintiff argues that the VE came to her own conclusions regarding the meaning of "limited" visual acuity, based on the discussion at the hearing between the VE and the claimant's representative. When Plaintiff's representative asked about the sedentary job of "toy stuffer," which the representative argued required near acuity occasionally, the VE testified as follows:

> VE: Right. That's what I considered when he said limited was occasional.
> REP: Okay, that's not exactly what he said, though, right. He just said it was limited.
> VE: Okay, but limit, right, but I had to put some kind, remember, he's got two eyes.
> REP: Okay.
> VE: I put some kind of value to it.
> REP: And with the surveillance system monitor position do you recall the last time that job was updated by the DOT?
> VE: No, I do not.
> * * *
> REP: And the near acuity in that position apparently is required is frequent.
> VE: Yes, and everything else is N.
> REP: So would you still say that that job is appropriate to the Judge's hypothetical regarding the claimant's visual limitations?
> VE: Because he's got two eyes.
> REP: But one of them is not very well.
> VE: Right.
> REP: So, you're keeping that job in there.
> VE: Yeah, because he's still, everything else is N, meaning none and the only thing that's frequent is the near acuity and he's got two eyes and it's, so I had to make a judgment on that.
> REP: So limited to you means he can do it frequently?
> VE: Well, with two eyes.
> REP: But one of the eyes is limited.
> VE: But he's got two eyes.

R. 54-55. The ALJ then clarified to the VE:

> ALJ: Just to clarify my questions, when I use the word limited for visual acuity you took that to mean and I think it's defined as occasionally.
> VE: Under most situations yes, at least occasionally.
> ALJ: At least occasionally. Okay, visual acuity.
> VE: Right, because he's got two eyes.

-12-

R. 56.

Plaintiff argues that, based on these exchanges at the hearing, the VE "came to her own definition regarding the meaning of 'limited' and, arguably, even made medical conclusions regarding a person's visual limitations because she indicated that the claimant had 'two eyes' on multiple occasions, apparently inferring that as long as one is working things are just fine." Doc. 14. Plaintiff argues that such is outside the scope of the duties of a VE to define visual limitations, and the ALJ himself noted that he thinks it is defined as occasionally. Plaintiff argues that being "blind" in one eye means he has no depth perception and this would restrict his field of vision to the extreme because he could not see out of one eye at all, and his visual acuity would be limited all of the time, not just "occasionally" limited because vision is an activity that occurs all throughout the day. Plaintiff cites *Gainey v. Commissioner of Social Security*, Case. No. 6:12-cv-1579-ORL-DAB (Feb. 7, 2014) ("a person's vision is either 'limited' or 'unlimited'" in the vision categories, and any other term such as "frequent" or "occasional" is "misplaced"). However, it is appropriate for a VE to discuss vision loss in terms of whether positions require near visual ability or gross visual ability, and this would not rise to the level of a "medical determination." *See, e.g., Lacy v. Astrue*, 2012 WL 6738495 (E.D. Mo. Dec. 31, 2012) (holding the ALJ had properly considered plaintiff's loss of vision in determining whether other work existed in the economy, where the VE testified the alternative occupations of bagger and packer required only "gross visual ability" according to the Dictionary of Occupational Titles).

The Commissioner argues that the ALJ properly considered all of the relevant evidence and substantial evidence supports the ALJ's assessment of Plaintiff's RFC. As the Court discussed above, the ALJ's determination of Plaintiff's RFC was based on substantial evidence, and additional limitations are not warranted.

The Commissioner argues that Plaintiff's challenge of the VE's testimony is really to her opinion that a hypothetical individual with Plaintiff's vocational characteristics could perform the job

of system-surveillance monitor because such job requires "frequent" near acuity. R. 54-56. The Commissioner argues that, even if the VE erred in finding Plaintiff could perform the system-surveillance monitor position, such error was harmless because the VE identified *two other* jobs Plaintiff could perform which did not require "frequent" near acuity, and Plaintiff failed to prove he could not perform those positions. R. 18, 51-52, 54-56. Doc. 24 at 10 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination")). Plaintiff has not argued that he could not perform the additional jobs identified by the VE in her testimony which was relied upon by the ALJ. R. 18. Moreover, the positions the VE provided were representative of those she could have listed and not an exhaustive list. *See* R. 56. Substantial evidence supports the limitations included in the ALJ's RFC determination and his reliance on the VE's testimony. Accordingly, the ALJ's hypothetical question was supported by substantial evidence.

## IV.  CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on November 6, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-14-